ceeding seven years, nor less than three years. Within the limits assigned, it is clear that the court would determine the fine and imprisonment, and if there were nothing more in the act, that an indictment would be a proper mode of prosecution. But the same section contains a clause that distributes "one moiety of the fine to the use of the United States, and the other moiety to the use of the person or persons who shall sue for such forfeiture and prosecute the same to effect." But the mode of suit or prosecution is not explicity declared, nor is any limitation imposed upon the United States to proceed by action of debt or case, or by information. Nor is the interposition of an informer indispensable to the prosecution. The United States may proceed on the information of its own functionaries. The punishment attached to a conviction for this offence places it in the grade of offences for the robbery of the mail, when the life of the courier is not threatened, and stealing of the mail, of the offences of being accessories after the fact to murder, and piracy on the high seas, and the embezzlement of public property and misprision of felony. The constitutional, safe, regular and usual method of a proceeding against such offenders is by indictment or presentment of a grand jury, and I should require words of explicit direction, before I should feel authorized in saying that congress had prescribed a different method. The distribution of the penalty follows the conviction, and can be as well done after a criminal prosecution as a civil action. It would be a strange anomaly in the course of procedure in the courts of the United States that would terminate in a judgment of fine and imprisonment upon an action of debt or case. I think I am hardly justified by any rule for the judicial interpretation of statutes in pronouncing that the terms employed in this section of the act were designed to make so grave an alteration in the law of criminal procedure. The rights and interests of the accused are promoted by adhering to that system which is preferred by the constitution, and has been consecrated by usage.

I have thus exhibited my views upon this statute and upon the considerations that have been opposed to them. I have stated upon different occasions here, and in other courts of this circuit, the opinions that are here examined. The indictments returned in this and other cases in this court, and in other courts of this circuit, were found by the grand jury in accordance with them. Regarding this act as within the competency of congress, my duty is performed, when I have ascertained their meaning, and declare it, whenever a question is raised in a case at law upon it. This I have done in this case. The order of the court is, that process issue to the marshals of the state of Mississippi, as well as to the marshal of this district, for the arrest of the accused.

## Case No. 15,330.

### UNITED STATES v. HAVEN.

[See Case No. 16,788.]

---

## Case No. 15,331.

### UNITED STATES v. The HAWKE.

[Bee. 34.] [1]

District Court, D. South Carolina. July 4, 1794.

SHIPPING—VIOLATION OF LICENSE LAW—CONDEMNATION AND SALE TO ALIEN.

1. By the licensing act of the United States of February 18th, 1793 [1 Stat. 305], no coaster can be sold in a foreign port, unless her license be previously surrendered; nor is her American character changed by such transfer.

2. But if she be condemned for violation of that law, and sold under order of court, she may become foreign property. So if the purchaser under the first insufficient title comply with the requisites of the act of congress of Aug. 4th, 1790 [1 Stat. 145]. In either case she may be a lawful privateer under a foreign commission.

Before BEE, District Judge.

This suit, on the part of the United States is founded on the 8th and 32d clauses of the act for enrolling and licensing vessels employed in the coasting trade, passed February 18th, 1793. The 8th clause enacts that if any vessel enrolled and licensed conformably thereto shall proceed on a foreign voyage without first giving up her enrolment and license, and obtaining a register, she shall be liable to seizure and forfeiture. The 32d clause enacts that if any licensed ship or vessel shall be transferred in whole or in part to any person who is not at the time of such transfer, a citizen of and resident within the United States; or if such ship or vessel shall be employed in any other trade than that for which she is licensed, she shall, with her tackle, furniture and cargo found on board, be forfeited.

To support the libel, one witness, the deputy-collector, was called, who proved that this schooner on the 14th of May, during the continuation of the embargo, cleared out, by virtue of her license as a coaster, for St. Mary's, in Georgia.

It appeared from an exhibit filed by the claimant that the schooner Hawke was sold on the 10th of June at Port-de-Paix, to Bolchos, the claimant, by Cooke, captain of the schooner, in pursuance of orders from the owner, Gohier.

The district attorney contended that this vessel was proved to have departed to a foreign port, without having delivered up her license, as the 8th section of the act directs; that she was, therefore, forfeited. That when in a foreign port, she was sold to a foreigner, for which she is declared by the 32d clause to be forfeited. And that on these

---

[1] [Reported by Hon. Thomas Bee, District Judge.]